UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CORAL LLC, an Oklahoma limited liability company,** ) ) ) **Plaintiff,** ) ) v. ) ) **RECRUITMENT SPECIALISTS, INC., a Nevada corporation; and DOUG GEINZER,** ) ) ) **Defendants,** ) | No. CIV-23-891-R |

## ORDER

Before the Court is Defendants Recruitment Specialists, Inc. and Doug Geinzer's Motion for Summary Judgment [Doc. No. 75]. Plaintiff Coral, LLC responded [Doc. No. 79], and Defendants replied [Doc. No. 81]. The matter is now at issue. For the reasons that follow, Defendants' Motion is GRANTED in part and DENIED in part.

### BACKGROUND

Coral developed and maintains an online platform that connects healthcare providers with payers and care managers. Doc. No. 79 at p. 2. Geinzer has experience in the business side of the healthcare industry, and is the owner and operator of RSI, which does business as High Performance Providers ("HPP") [Doc. No. 79-5 at p. 8]. HPP is a consulting company that connects medical providers with self-funded health plans. Doc. No. 75 at p. 1.

1

While Coral and HPP had previously executed less formal agreements, on October 1, 2022, they entered a final, superseding Consulting Agreement [Doc. No. 79-5]. This Agreement is the subject of the instant litigation.

Under the Agreement, HPP was to provide exclusive consulting services to Coral in exchange for a fee. *Id*. §§ 1-2. The Agreement also included three purchase options. *Id*. § 4. Under the first option, Coral could purchase HPP at any time for $5,000,000. *Id*. § 4.1(a). The second option obligated Coral to purchase HPP if certain revenue benchmarks were met by the end of March 2023. *Id*. § 4.1(b). The final option gave HPP the right to sell itself to Coral for $4,000,000 upon the achievement of certain revenue goals. *Id*. § 4.1(c).

The Agreement mandated HPP to present itself exclusively as a representative of Coral, *id*. § 1, to maintain all non-public information in strict confidence, *id*. § 9, and to notify Coral of any on-going consulting relationships between HPP and a competitive third party prior to execution of the Agreement, *id*. § 11.1, as well as to obtain Coral's written consent before providing any potentially competitive services to third parties during the term of the Agreement, *id*. Moreover, while the Agreement could be terminated at the convenience of either party, *id*. § 5, or by Coral "for cause," *id*. § 6.1, HPP was barred from competing with Coral for a period ranging from 6 to 36 months depending on the method of termination. *Id*. §§ 6.1-6.3. Regardless of how the Agreement was terminated, both HPP and Geinzer individually remained obligated to hold Coral's non-public information in strict confidence. *Id*.

As part of the Agreement, HPP gave Coral "an irrevocable, nonexclusive, worldwide, royalty-free license" to utilize HPP's Client Relations Management System ("CRM System"). *Id*. § 10. The CRM System was maintained on a third-party server called HubSpot. Doc. No. 75 at p. 2. HPP's business contacts and internal information were stored in the CRM System. *Id*. Upon execution of the Agreement, the HubSpot account that held the CRM System was transferred to Coral. Doc. No. 79 at p. 8. HPP describes the transfer as a "lease-to-own" agreement—Coral was given unrestricted access to the CRM System to promote efficiency and maximize the likelihood that the revenue benchmarks would be met to trigger Coral's purchase of HPP [Doc. No. 44, ¶ 101]. Put another way, it is HPP's view that Coral's ownership of the CRM System was conditional upon Coral purchasing HPP. *Id*. Coral, on the other hand, views the transfer of the CRM System as memorializing the transfer of ownership of the CRM System from HPP to Coral. Doc. No. 79 at pp. 8-9. In that same vein, Coral states that it then allowed HPP to continue accessing the CRM System only so it could provide Coral services under the Agreement. *Id*. at p. 9.

The instant dispute arose because the revenue benchmarks were not met, and the purchase options were therefore not triggered. *Id*. at p. 10. When Coral did not exercise its discretionary option to purchase HPP for a flat fee, Geinzer sought to modify HPP's compensation structure. *Id*. Coral's CEO, Gregory Smith, found Geinzer's proposed modifications unreasonable and directed him to present his amendments to a group of Coral's non-managing members. *Id*.

A board meeting was held on August 16, 2023. *Id*. Ahead of the meeting, Geinzer allegedly circulated an inflammatory agenda that misrepresented the terms of the

Agreement and blamed Coral for the failure to achieve the requisite revenue benchmarks. *Id*. at pp. 10-11. Upon learning of the agenda, Gregory Smith requested that his son, Morgan Smith, be given super administrative privileges to the HubSpot account, and Morgan Smith then deactivated the HubSpot accounts of Geinzer and other HPP employees. *Id*. at p. 11.

At the meeting, Geinzer allegedly repeated the contents of the agenda and accused Coral of stealing HPP's intellectual property. *Id*. After the meeting, Gregory Smith emailed Geinzer, telling him that the Agreement was being suspended because of Geinzer's conduct. *Id*. at p. 12. The next day, Geinzer was sent a formal notice of suspension, directing that HPP was no longer authorized to act on Coral's behalf. *Id*. at pp. 11-12. Coral then designated Steve Marler to negotiate a resolution with Geinzer. *Id*. at p. 12. On a call between Geinzer and Marler, Geinzer allegedly "threatened to take affirmative action to destroy Coral by blocking specific transactions and disrupting Coral's relationships with both existing and potential customers by using upcoming meetings, set while Geinzer worked for Coral, with existing and potential Coral customers to solicit business on behalf of himself and HPP." *Id*. Geinzer also allegedly claimed that he "did not need his relationship with Coral as certain Coral customers were paying him anyways[.]" *Id*. at pp. 12-13.

On August 18, 2023, Gregory Smith claims to have received calls from customers that Geinzer was contacting them and misrepresenting the nature of the dispute and telling

4

them that Coral had stolen HPP's intellectual property.[1] *Id.* at p. 13. Smith then emailed Geinzer, directing him to stop contacting Coral's customers and that under the Agreement, it was impossible for Coral to steal HPP's intellectual property. *Id.*

On August 21, 2023, Geinzer emailed a group of individuals that included Coral's existing and prospective customers that his email had changed to his HPP email address. *Id.* Coral views the email as evidence of wrongdoing, *id.*, while Geinzer states that he merely sent the email "to contacts whom HPP had been in communication with over the past year to inform them that his email address had changed" after Coral removed his access to his Coral email account, Doc. No. 75 at p. 4.

On August 23, 2023, HPP instructed HubSpot to freeze the account. Doc. No. 75 at p. 14. HPP claims that it did so to protect its data that was in Coral's possession during the dispute. Doc. No. 79 at p. 4. Coral alleges that the freeze was improper because Coral was the owner of the HubSpot account, as well as unnecessary because HPP had previously exported the data contained in the HubSpot account. Doc. No. 79 at pp. 14-15. After contact from Coral's counsel, the HubSpot account was unlocked within 24 hours. *Id.* at p. 15. It is undisputed that there is no evidence that anyone other than HubSpot staff individually accessed the account. *Id.* at pp. 15-16.

On August 28, 2023, Coral filed the instant action in state court. In its Amended Petition [Doc. No. 1-4], Coral brings claims for conversion,[2] breach of contract, tortious

---

[1] Defendants challenge the admissibility of this allegation as hearsay.

[2] Coral has since voluntarily dismissed its conversion claim [Doc. No. 80].

5

interference, declaratory relief, and injunctive relief. Defendants subsequently removed the suit to federal court [Doc. No. 1].

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden to show the absence of a genuine issue of material fact." *Lazy S Ranch Properties, LLC v. Valero Terminaling and Distribution Co.*, 92 F.4th 1189, 1198 (10th Cir. 2024) (citation omitted). "If successful, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue for trial." *Id*. (citation and quotation marks omitted). The Court "views the facts and their reasonable inferences in the light most favorable to the nonmovant." *Id*. (citation omitted).

## DISCUSSION

### I. Breach of Contract

Coral alleges that Defendants breached the Consulting Agreement by (1) soliciting and redirecting Coral's existing and prospective customers, (2) disparaging Coral, and (3) using or disclosing Coral's confidential and proprietary information. Doc. No. 1-4, ¶¶ 22, 25-33; Doc. No. 79 at pp. 17-23. Each is addressed in turn.

"The elements of a breach of contract action are: (1) formation of a contract; (2) breach of the contract; and (3) damages as a result of that breach." *Morgan v. State Farm Mut. Auto. Ins. Co.*, 2021 OK 27, ¶ 21, 488 P.3d 743 (citation omitted). However a "breach of contract is a legal wrong independent of the existence of actual damages…[so] [t]he plaintiff acquires the legal right to sue when the first two elements are present: formation

of a contract and breach of the contract." *Id*. ¶ 24 (citation omitted). At that point, the cause is actionable and the plaintiff is entitled to nominal damages." *Id*. (citation omitted).

### A. Solicitation or Redirection

Coral presents the following evidence to support its solicitation and redirection theory of breach:

- The August 21st email sent by Geinzer to Coral's existing and prospective customers, notifying them that his email address had changed back to his HPP email address;

- The email thread between Geinzer and a representative of GEM Health spanning from April 2023 to August 21, 2023;

- An email thread between Geinzer and OrthoForum;

- A series of cancelled meeting invitations between Coral and prospective customers; and

- The declaration of Pearl Precision Surgery's CEO stating that HPP held side agreements and received (or should have received) payments for providing steering services on Coral's platform, as well as emails between Geinzer and BARInet showing the same.

HPP first argues that because the Agreement did not contain a non-solicitation clause, Coral's claim for breach predicated on solicitation cannot defeat summary judgment. Doc. No. 75 at pp. 11-12. But Section 1 of the Agreement requires that HPP present itself to Coral's customers as representing Coral "and not any other business or entity." Doc. No. 79-5, § 1. So soliciting or redirecting business from Coral would violate the Agreement.

HPP next contends that evidence of its side agreements with Pearl Precision and BARInet—both Coral customers—should not be considered because Coral did not

7

adequately allege the claims in its Amended Petition. Doc. No. 75 at pp. 16-18. In its Amended Petition, Coral alleges that "Defendants made multiple misrepresentations of fact prior to, and during, the performance of the Agreement, including failing to disclose his engagement in competition with both clients of Coral and third parties[.]" Doc. No. 1-4, ¶ 22. This sufficiently captures the alleged side agreements between HPP and Pearl Precision and BARInet.

Considering the evidence presented by Coral in the light most favorable to Coral as the non-moving party, a reasonable juror could find in favor of Coral on its theory of solicitation or redirection. Both the context surrounding HPP's conduct after the Agreement was suspended, and the evidence of side agreements entered during the term of the Agreement, are sufficient to create a genuine dispute of material fact regarding solicitation and redirection.

Accordingly, Defendants' Motion regarding solicitation or redirection is denied.

**B. Disparagement**

HPP also contends that Coral cannot present admissible, non-speculative evidence that HPP disparaged Coral in violation of the Agreement. Doc. No. 75 at pp. 15.

Coral presents three pieces of evidence to support its disparagement claim. First is an email from a representative of OrthoForum stating that she "can dig into the Coral responsiveness issues and separate your good name from any lag[]" [Doc. No. 79-22]. Second is the testimony of Gregory Smith claiming that customers had contacted him and told him that Geinzer was attempting to interfere with Coral's business and was accusing Coral of stealing HPP's intellectual property [Doc. No. 79-1, ¶ 36]. Third are a pair of

emails sent from Gregory Smith to Geinzer directing Geinzer to stop contacting Coral customers and stating that under the Agreement, it was not possible for Coral to steal HPP's intellectual property [Doc. Nos. 79-10, 79-11].

The evidence brought by Coral is insufficient to defeat Defendants' Motion.

First, the email from OrthoForum that references Coral's responsiveness issues is not coupled with any evidence connecting that assertion to Geinzer. OrthoForum's negative statement about Coral is attributed to Geinzer by nothing but speculation.

Second, HPP challenges the admissibility of Gregory Smith's testimony as hearsay—specifically as hearsay within hearsay. Doc. No. 81 at p. 5. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay within hearsay is admissible so long as there is a hearsay exclusion at each level. Fed. R. Evid. 805. Here, the initial statement—from Geinzer to the customers—is admissible non-hearsay because Geinzer is an opposing party. *See* Fed. R. Evid. 801(d)(2)(A). But the second statement—from the customers to Smith—is hearsay without an exception, and therefore will not be considered.

Finally, the two emails sent from Smith to Geinzer are also insufficient to defeat Defendants' Motion. The emails were sent to Geinzer's Coral email address on August 18, 2023. On August 16, 2023, Smith directed his son to block Geinzer's access to his Coral email account [Doc. No. 79-1, ¶ 29]. So Smith sent the email knowing that Geinzer would not receive it. And the purpose and content of the emails is derived solely from the statements deemed inadmissible in the paragraph above. These emails—without more—do not create a genuine dispute regarding disparagement.

9

Accordingly, Defendants' Motion regarding Coral's disparagement theory of breach is granted.

### C. Use or Disclosure of Confidential and Proprietary Information

HPP lastly moves for summary judgment on Coral's claim that HPP breached the Agreement by using or disclosing Coral's confidential and proprietary information. Doc. No. 75 at pp. 15-16. Coral has filed an affidavit under Rule 56(d) of the Federal Rules of Civil Procedure asking the Court to either deny the Motion or delay ruling on the Motion until further discovery has been conducted [Doc. No. 79-18]. The Court declines to do so and grants Defendants' Motion regarding Coral's use and disclosure theory of breach.

Under Rule 56(d) of the Federal Rules of Civil Procedure, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "In the Tenth Circuit, a non-movant requesting additional discovery under Rule 56(d) must specify in the affidavit (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 (10th Cir. 2021) (citation and quotation marks omitted).

Coral claims that evidence of HPP's use or disclosure of its confidential and proprietary information is unavailable because Defendants have not provided responsive discovery regarding past payments from Coral's existing and prospective customers, as

10

well as instances in which Geinzer claimed Coral breached the Agreement. Doc. No. 79-18, ¶ 19. In her Affidavit, dated November 11, 2024, Coral's former counsel states that "Coral intends to file a motion to compel[.]" *Id*. ¶ 34. But to date, no motion to compel has been filed. And while Coral asserted that discovery was on-going, it has not notified the Court one way or another regarding HPP's production. Coral's pursuit of the requested discovery, therefore, has not been sufficient—especially considering the lack of a motion to compel—to warrant an extension of time.

Accordingly, Coral's Rule 56(d) request is denied. And because Coral fails to present sufficient evidence to defeat HPP's Motion regarding Coral's use and disclosure of confidential and proprietary information theory of breach, Defendants' Motion regarding that theory is granted.

## II.   Tortious Interference

Coral asserts a claim for tortious interference with contracts and prospective business relationships. Doc. No. 1-4, ¶¶ 45-53.[3] The factual basis for Coral's tortious interference claims largely mirrors that of its breach of contract claims.

To succeed on a claim for tortious interference with a *present* contractual or business relationship, the plaintiff must prove: "(1) interference with a business or contractual right; (2) malicious and wrongful interference that is neither justified, privileged, nor excusable;

---

[3] Oklahoma law recognizes two separate forms of tortious interference: (1) tortious interference with a *present* contractual or business relationship; and (2) tortious interference with a *prospective* economic advantage. *See Loven v. Church Mut. Ins. Co.*, 2019 OK 68, ¶ 21, 452 P.3d 418. Because Coral asserts that HPP interfered with both its present and prospective business relationships, the Court interprets the pleadings as asserting two separate claims.

11

and (3) damage proximately sustained as a result of the interference." *Tuffy's, Inc. v. City of Okla. City*, 2009 OK 4, ¶ 14, 212 P.3d 1158 (citations omitted).

To prevail on a claim for tortious interference with a *prospective* economic advantage, a plaintiff must allege and prove: "(1) the existence of a valid business relation or expectancy; (2) knowledge of the relationship or expectance on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted." *Loven*, 2019 OK 68, ¶ 21. A showing of bad faith is required, which can be proven by evidence that the "interference [was] the purpose of the tortfeasor's act, and their motive [includes] a desire to interfere and disrupt the others' prospective economic business advantage." *Id*.

Coral asserts that HPP harmed its existing business relationships by soliciting business and receiving double payments from Coral customers during the term of the Consulting Agreement. Doc. No. 79 at pp. 34-35. But Coral fails to present evidence that HPP's alleged interference damaged Coral's business. Unlike its breach of contract claim in which nominal damages were sufficient to proceed, tortious interference requires actual damages. *See Morgan*, 2021 OK 27, ¶ 24 ("But, unlike a tort claim, a breach of contract is a legal wrong independent of the existence of actual damages."). Accordingly, Defendants' Motion regarding Coral's tortious interference with an existing business relationship claim is granted.

Coral's claim for tortious interference with prospective economic advantage, on the other hand, is supported by evidence—specifically the email from the representative of GEM Health to Geinzer on August 21, 2023—sufficient to defeat Defendants' Motion.

Coral held an expectancy in GEM Health's business, as Geinzer was negotiating with GEM Health on Coral's behalf for months to bring GEM Health on to Coral's platform. Doc. No. 79-20. Geinzer was aware of Coral's expectancy, as he took the lead on attempting to bring GEM Health on to Coral's platform. *Id*. Following Coral's suspension of the Consulting Agreement, and before Geinzer emailed other contacts that his email address had changed, Geinzer first notified the representative of GEM Health that his email had changed. *See* Doc. No. 75-5; Doc. No. 79-20. And the representative for GEM Health updated Geinzer's email in the same email thread that Geinzer had been using to negotiate on behalf of Coral for months. Doc. No. 75-20 at p. 1. Finally, Coral was damaged by this alleged interference because the only step remaining between Coral receiving GEM Health's business was Geinzer sending the contract to GEM Health's CEO for final signature. That the deal fell through following Geinzer's email creates a reasonable inference that Geinzer interfered with Coral relationship with GEM Health, and that such interference was Geinzer's primary purpose.

Accordingly, Defendants' Motion regarding interference with prospective business relationships is denied.

### III.    Declaratory Relief

Coral requests a declaration that it is not required to purchase HPP because the necessary revenue benchmarks were not met under the Agreement. Doc. No. 1-4, ¶¶ 40-

44. Defendants seek summary judgment on grounds that Coral's declaratory relief claim is duplicative of Defendants' counterclaim for breach of contract. Doc. No. 75 at p. 9. Coral responds that summary judgment is not proper because Coral was only required to purchase HPP if certain revenue benchmarks were met within a specific period, irrespective of whether Coral prevented HPP from meeting those benchmarks. Doc. No. 79 at pp. 32-33.

When deciding whether to declare the rights of litigants, district courts in the Tenth Circuit apply the factors announced in *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994):

> (1) Whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Golf Club, L.L.C. v. Am. Golf Corp.*, 2017 WL 1655259, at *2 (citation omitted). Where there is no parallel state litigation, the third and fourth factors hold little to no relevance.

Here, like in *Golf Club*, the Court is presented with a largely duplicative claim. *See Id*. ("the Court finds all applicable factors weigh in favor of dismissal of Plaintiff's duplicative claim."). Coral's requested relief would not resolve Defendants' corresponding breach of contract counterclaim. And because Defendants' duplicative claim must also be resolved, declaratory relief would not serve a useful purpose or clarify the parties' legal relations. Finally, the alternative remedy of adjudicating Defendants' counterclaim is a more effective means of resolving the instant dispute.

Accordingly, Defendants' Motion regarding Coral's claim for declaratory relief is granted.

## IV. Injunctive Relief

Coral requests that Defendants be enjoined from the following conduct:

- Competing with Coral;
- Soliciting customers from Coral;
- Using or possessing Coral's confidential and proprietary information; and
- Disparaging Coral.

Doc. No. 1-4, ¶¶ 59(a)-(d).

"In diversity cases, the law of the forum state governs claims for injunctive relief." *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1002 (10th Cir. 2008) (citation omitted). "'Under Oklahoma law, injunctive relief is not warranted where a plaintiff has a plain, speedy, and adequate remedy at law.'" *Id*. (quoting *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1242 (10th Cir. 2006)). "If a plaintiff's injury may be compensated by an award of monetary damages then an adequate remedy at law exists." *Id*. (citation and quotation marks omitted).

Here, the conduct that is the subject of Coral's request for injunctive relief mirrors its grounds for breach of contract. *See* Doc. No. 1-4, ¶¶ 27-31. Coral seeks money damages as the remedy for Defendants' alleged breach. *Id*. ¶ 33. There is no indication that money damages are not a sufficient remedy to the conduct at issue. Accordingly, the Court finds injunctive relief in this case to be inappropriate under Oklahoma law and therefore grants Defendants' Motion on Coral's claim for injunctive relief.

## CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part. Specifically, the Court finds as follows:

- Defendants' Motion regarding Coral's breach of contract claim is DENIED regarding Coral's solicitation theory, but is GRANTED as to Coral's remaining theories of breach.

- Defendants' Motion regarding Coral's tortious interference claim is DENIED as to Coral's claim for interference with prospective business relations, but is GRANTED as to Coral's claim for interference with existing business relations.

- Defendants' Motion regarding Coral's prayer for declaratory relief is GRANTED.

- Defendants' Motion regarding Coral's prayer for injunctive relief is GRANTED.

IT IS SO ORDERED this 1st day of April, 2025.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE